### J. T. JOHNSON v. STATE.

No. A-4452.    Opinion Filed June 7, 1924.
(226 Pac. 593.)

#### (Syllabus.)

**Evidence—Lost Instruments—Insufficiency of Evidence of Loss to Admit Copy.** Where the very essence of a controversy is the correctness of a purported copy of a written instrument, such copy should not be admitted in evidence, unless it appear that the original (and in this case there were two originals) has been lost or destroyed.

  a. In that regard the showing here was wholly wanting as to one original and insufficient as to the other.

Appeal from District Court, Nowata County; C. W. Mason, Judge.

J. T. Johnson was convicted of embezzlement, and he appeals. Reversed and remanded.

Bert Van Leuven, for plaintiff in error.

The Attorney General, and J. Roy Orr, Asst. Atty. Gen., for the State.

BESSEY, J. The plaintiff in error, J. T. Johnson, here referred to as the defendant, was informed against and convicted in the district court of Nowata county of the crime of embezzlement, and his punishment was fixed by verdict of the jury at imprisonment for one year in the state penitentiary. From the judgment on this verdict he appeals.

The facts disclosed in the record show that C. L. Wulf, of Garden Plains, Kan., was interested in the sale of some personal property belonging to a Mr. and Mrs. Nolte, who

were involved in divorce proceedings then pending in Nowata county. The different articles of personal property had been divided, by agreement, between Mr. and Mrs. Nolte, but as the joint sale of the property approached, fearing that she might not obtain her share of the proceeds of such sale, Mrs. Nolte by her attorney, the defendant J. T. Johnson, caused a restraining order to be issued, restraining the sale.

Wulf testified that he wanted the sale to proceed, and went to the defendant, and entered into an agreement with him, under the terms of which he delivered to the defendant a check for $750, as a guarantee to Mrs. Nolte that she would receive her full share of the proceeds of the sale if she would allow the sale to proceed. Wulf was a relative of Mrs. Nolte, and made this arrangement to expedite settlement of the affairs of the Noltes.

At the time Wulf delivered the check to the defendant a receipt and contract in writing was drawn in duplicate, one duplicate original being delivered to Wulf and the other to Mrs. Nolte. The defendant says that before delivering the duplicate original to Mrs. Nolte he made an office copy of it for himself. Neither of these duplicate originals was produced in evidence, but a copy made by Wulf some weeks later was introduced in evidence, over the objections of the defendant. This copy reads as follows:

"Sept. 16, 1919.

"Received of C. L. Wulf check in the sum of $750 as a guarantee of payment to Mrs. Ida Nolte for all her household goods and merchandise sold Sept. 16, 1919. Should there be a balance after said bill is paid same is to be returned to said C. L. Wulf and for the withdrawal of the suit now pending. J. T. Johnson, Atty. for Ida Nolte."

The defendant challenged the correctness of this copy, and in the course of his defense introduced what he claimed was the copy made by the defendant, as follows:

"Receipt and Agreement.

"$750.00.

"Nowata, Okla., Sept. 16, 1919.

"Received of C. L. Wulf of Garden Plains, Kansas, the sum of seven hundred fifty dollars, of which the sum of two hundred fifty dollars is payment for the attorney's fee for Mrs. Ida Nolte, wherein Fred Nolte is plaintiff and Ida Nolte is defendant; the sum of two hundred fifty dollars is attorney fee for C. L. Wulf for the suppression of testimony about to be introduced at the trial of said cause. The remaining two hundred fifty dollars to be applied to discharge the payment of furniture bought at public sale by C. L. Wulf, and in the event said sum overpays said bill then in that event said balance or overplus is to be the money of J. T. Johnson, and should said sum not be sufficient to pay said furniture bill, then said J. T. Johnson is hereby authorized to draw a draft on C. L. Wulf in such sum as required to make said payment and pay same to Ida Nolte, same to be settlement in full for the furniture bought of Ida Nolte by C. L. Wulf. J. T. Johnson, Attorney for Ida Nolte and C. L. Wulf."

The defendant admits that he personally used the major part of the money represented by the check delivered to him by Mr. Wulf, but claims that the money so used belonged to him for attorney fees, and that the balance was paid to Mrs. Nolte pursuant to the terms of the agreement, as he claims it was made.

The state claims that the defendant converted the money to his own use and benefit in violation of the trust and contract of guaranty. Whether he used the money in violation of a trust was the vital issue in this case; the state says he did; the defendant says he did not. Both parties sought to sustain their position and respective claims by secondary evidence in the form of unverified copies of the duplicate originals, without a showing that neither of the duplicate originals were inaccessible. This situation arose in this wise.

"Q. I will ask you (Mr. Wulf) to examine this paper here and tell us what it is. A. This is a copy of the agreement.

"Mr. Johnson: At this time the defendant objects to the introduction of that agreement, because it is not a certified copy, and it is not a copy of the real agreement.

"The Court: It has not been offered yet, Mr. Johnson. Overruled at this time. * * *

"Q. Read the last question, please. (Question read.) A. This is a copy of the original agreement.

"Q. Where did you get that, Mr. Wulf? A. The copy?

"Q. That right there (indicating). A. I got this copy— I had my stenographer to make this copy in my presence.

"Q. Then what did you do with that? A. I also had my stenographer read the copy over, and asked her to make me a sworn statement of this copy.

"Q. Then what did you do with that copy then, after that; after that did you have it in your possession? A. Yes, this copy has been in my possession up until last spring. (At this time a paper is handed to the reporter to be marked for identification, and is so marked by the reporter as state's Exhibit No. 1.)

"Q. At this time tell us where the original of that is, so far as you know? A. So far as I know, at the time the original was made out, the original was mailed to Mr. E. E. Sams.

"Q. Have you made demand on Mr. Sams for that? A. I have.

"Q. Have you got the original; have you received it from him? A. I don't remember whether I did or not; I couldn't say.

"Q. Have you got the original? A. No, I have not got the original. The original was mailed to Mr. Sams, and in some way in the mail it was lost; I have lost track of it. * * *

"Q. Have you made any effort—have you made an effort to get back the original of this state's Exhibit 1? A. I did.

"Q. Just tell the jury what effort you made? A. Well, sir, I have written to Mr. Sams about the agreement, and it seems as though—I don't know whether Mr. Sams lost it or whether my stenographer lost it; it is either filed away in some place, and not being able to get this original—this copy was made of the original before the original was sent to Mr. Sams.

"Q. That is the last recollection you have of the original, was when you sent it to Mr. Sams? A. Yes, sir.

"Q. Have you talked to Mr. Sams about this? A. I have.

"Q. And what did he inform you? A. He said he looked through all his files, and is unable to find it.

"Mr. Nairn: We again offer state's Exhibit 1 in evidence, being a copy of the lost instrument, which has been proven to be a copy, and which the testimony has been he has been unable to find the original.

"Mr. Johnson: To which the defendant objects, because there is nothing to show that it is a true and correct copy of the original; Mr. Sams has not testified; there is nothing here to show, and the objection is made by the defendant to its introduction at this time because there is nothing to show it is a true and correct copy of the original. The original is the best evidence.

"The Court: I think the loss of the original is sufficiently explained to admit it as secondary evidence. The objection will be overruled, and it will be admitted."

Near the close of the taking of testimony it appears from the dialogue had between attorneys and the court that Mr. E. E. Sams, an attorney in Nowata, desired to go to Kansas City, and by agreement of attorneys on both sides Mr. Sams was permitted to go to Kansas City, the understanding and agreement being that his testimony given at a

former trial of the defendant upon this charge would be received in evidence. But, when the state sought to introduce this evidence taken at a former trial, the defendant objected. At this point the record is as follows:

"Mr. Nairn: At this time the county attorney asks permission to read to the jury the testimony of Mr. E. E. Sams that was taken by the court reporter at the former trial of this case, and such request is based on the verbal understanding and agreement that was had by and between the county attorney and Mr. J. T. Johnson in open court yesterday, wherein it was agreed that Mr. Sams had been regularly subpoenaed in this case, and had been called to Kansas City, and that his testimony might be read to the jury the same as if he were here —the same as if—the same as if it was his verbal testimony; the agreement being made orally and in the presence of the court. (Objection by Mr. Johnson.) * * *

"The Court: You stood here in open court yesterday afternoon and told the court that you would agree to let Mr. Sams leave and go to Kansas City, and that the deposition might be used by the county attorney; you stated that you wanted to do Mr. Sams that favor.

"Mr. Johnson: I would be glad to do that at this time, but I was not in the proper attitude to really know and realize what was being done; I might have said that. I know your honor is right. I did not mean to do anything like that, though; at that time I would have said, 'Yes' to anything, but now I realize what I am doing.

"The Court: You know the court was not responsible for your condition yesterday. You as an attorney made the statement that you would agree to that.

"Mr. Johnson: Well, let it go.

"The Court: If you object to it, I cannot let it go in today, and won't.

"Mr. Johnson: I seriously object to it. I will admit that there is no better jurist on earth. I know you are telling me the truth, I admit it; but I do seriously object to it, because I know what I am doing now.

"Q. Are you withdrawing your objection—what you just dictated there, or not?

"Mr. Johnson: No, sir; I seriously object to the introduction of this. If there is anything that casts a reflection on the court—the court's remarks are absolutely correct on that—and I know that the court did not know the condition in which I was or anything of that sort; I feel grateful for his kindness and treatment, but I do object to the introduction of this. At that time I would have agreed to anything, but now I cannot agree to it.

"The Court: Objection sustained. I cannot let it go in."

The record shows that Mrs. Ida Nolte, a witness for the state, testifying concerning the duplicate original delivered to her, said, "I think I have it in my trunk at Wichita."

Since the correctness of the contents of the copy of the original contract introduced in evidence was challenged, it was vitally important that one or the other of the duplicate originals be produced. The defendant and the prosecuting witness were the only witnesses to the actual transaction; there was no dispute as to the manner of the spending of the money; therefore the production of one or the other of the original contracts would have definitely settled the issue of the guilt or innocence of the defendant.

There was no showing that any effort whatever was made to produce the original in the possession of Mrs. Nolte; and, in our opinion, no sufficient showing of diligence to produce the original delivered to Mr. Wulf; there being no explanation on the part of Sams, to whom Wulf stated he had delivered his original, as to what had become of it. We may assume that Sams either never received it or that it was lost by him, but that would be merely an assumption.

Where the very essence of a controversy is the correctness of a purported copy of a written instrument, such copy should not be admitted in evidence, unless it appear that the original (and in this case there were two originals) has been lost or destroyed. In that regard the showing here was wholly wanting as to one original and insufficient as to the other.

For that reason the cause is reversed and remanded. The other assignments of error need not therefore be analyzed, except that this court suggests that on a retrial of this cause the information should more definitely describe the trust agreement and state that the funds comprising the trust were dissipated contrary to the terms of the trust.

MATSON, P. J., and DOYLE, J., concur.